### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

HELENE DANIELS,
an individual,

                                                     Case No.:

       Plaintiff,

v.

WEBBANK CORPORATION,
d/b/a FINGERHUT CREDIT CARD,
a foreign for-profit corporation,
BLUESTEM BRANDS, INC.,
a/k/a FINGERHUT,
a foreign for-profit corporation,
LVNV FUNDING, LLC,
a foreign limited liability company, and
TRUEACCORD CORP.,
a foreign for-profit corporation,

       Defendants.

_____/

## VERIFIED COMPLAINT

**COMES NOW,** Plaintiff, HELENE DANIELS (hereinafter, "Plaintiff"), by and through

the undersigned counsel, and hereby sues Defendant, WEBBANK CORPORATION, d/b/a

FINGERHUT CREDIT CARD (hereinafter, "Webbank"), BLUESTEM BRANDS, INC., a/k/a

FINGERHUT (hereinafter, "Bluestem"), LVNV FUNDING, LLC (hereinafter, "LVNV"),

TRUEACCORD CORP. (hereinafter, "TrueAccord") (hereinafter collectively, "Defendants").

In support thereof, Plaintiff respectfully alleges as follows:

## INTRODUCTION AND PRELIMINARY STATEMENT

        This is an action for damages brought by an individual consumer for Defendants' violations

of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the

"FCCPA"), the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (hereinafter, the "FDCPA"), and the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA"), wherein Defendants, directly or indirectly, repeatedly communicated directly with Plaintiff in an attempt to collect a consumer debt despite Defendants possessing actual knowledge of Plaintiff's legal counsel with respect to such debt and despite possessing such counsel's contact information, and Webbank and/or Bluestem repeatedly made telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system, predictive telephone dialing system, or an artificial or pre-recorded voice despite Defendants lacking Plaintiff's prior express consent to make such calls.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1331, and 15 United States Code, Section 1692k(d).  Supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

2.      Venue in this District is proper because Defendants transact business in this District, and the conduct complained of occurred in this District.

3.      At all material times herein, Defendants' conduct, complained of below, occurs in Polk County, Florida.

4.      At all material times herein, Plaintiff is an individual residing in Polk County, Florida.

5.      At all material times herein, Defendant Webbank is a foreign for-profit corporation existing under the laws of the state of Utah with its principal place of business located at 215 South State Street, Suite #1000, Salt Lake City, Utah, 84111.

6.      At all material times herein, Defendant Fingerhut is a foreign for-profit corporation existing under the laws of the state of Delaware with its principal place of business located at 7035 Flying Cloud Drive, Eden Prairie, MN 55344.

7.      At all material times herein, LVNV is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 6801 S. Cimmaron Road, Suite 424-J, Las Vegas, Nevada 89113.

8.      At all material times herein, TrueAccord is a foreign for-profit corporation existing under the laws of the state of Delaware with its principal place of business located at 303 Second Street, Suite 750, San Francisco, California 94107.

### FCCPA STATUTORY STRUCTURE

9.      The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

10.     The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

11.     Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information

regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

12.     For example, the FCCPA and FDCPA each prohibit Defendants from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, and prohibit Defendants from communicating directly with a debtor known to be represented by an attorney in an attempt to collect a consumer debt.  *See* Fla. Stat. §§ 559.72(7) and (18); 15 U.S.C. §§ 1692c(a)(2) and (d).

## TCPA STATUTORY STRUCTURE

13.     Congress enacted the TCPA to restrict pervasive use of automated or prerecorded telephone calls that invade consumers' personal privacy.  Pub L. 102-243, § 2, Dec. 20, 1991, 105 Sta. 2394 (1), (5), and (10).

14.     Congress intended to prevent automated or pre-recorded telephone calls as "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id*. at §§ (5) and (12).

15.     Under the TCPA, any person who initiates calls to any number assigned to a cellular telephone service using any automated telephone dialing system or artificial or prerecorded voice without the recipient's prior express consent is liable to the recipient for actual monetary loss, or up to $500.00 in damages for each violation of the TCPA, whichever is greater.  47 U.S.C. § 227(b)(3)(B).

16.     Under the TCPA, the court may increase the damage award up to three (3) times, or up to $1,500.00, for each willful or knowing violation of the TCPA.  *Id* at § 227(b)(3)(C).

17.     Furthermore, the Restrictions on Use of Telephone Provision, 47, United States Code, Section 227(b)(1) prohibits any person:

      (A)    To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, … or any service for which the called party is charged for the call.

18.    Additionally, Plaintiff alleges that Defendant continued to call her cellular telephone using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV") in violation of the FCC Rule, 47 C.F.R. Section 64.1200(a)(1).

19.    One of the regulations prescribed under the TCPA is the Federal Communications Commission ("FCC")'s rule, 47 C.F.R Section 64.1200 ("FCC Rule"), that implements the TCPA. The FCC originally promulgated the FCC Rule in 1992, since which time it has subsequently been amended as telecommunications technology has changed.

20.    In its current state, the FCC Rule, 47 C.F.R. § 64.1200, provides, in relevant part, that:

(a) No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice;
. . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

## **GENERAL ALLEGATIONS**

21.    At all material times herein, Webbank and Bluestem are each is a "creditor" as defined by Florida Statutes, Section 559.55(5).

22.    At all material times herein, LVNV and TrueAccord are each a "debt collector" as defined by Florida Statutes, Section 559.55(7) and 15 United States Code, Section 1692a(6).

23.    At all material times herein, LVNV and TrueAccord each use interstate mail while engaging in a business, the principal purpose of which is the collection of consumer debts.

24.    At all material times herein, LVNV and TrueAccord each collect or attempt to collect—directly or indirectly—debts owed or due to another, or asserted to be owed or due to another, from consumers in Polk County, Florida.

25.    At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and 15 United States Code, Section 1692a(3).

26.    At all material times herein, Defendants attempt to collect a debt, specifically alleged past-due balances on Fingerhut branded credit cards referenced by account numbers ending in -4639 (hereinafter, "Debt -4639") and -9031 (hereinafter, "Debt -9031") (hereinafter collectively, the "Debt").

27.    At all material times herein, the Debt is consumer debt, obligations resulting from transactions for goods or services and incurred primarily for personal, household, or family use.

28.    At all material times herein, Defendants are each a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. §§ 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

29.     At all material times herein, Defendants' conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

30.     At all material times herein, Defendants acted themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, servicers, and/or insurers.

31.     All necessary conditions precedent to the filing of this action occurred or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

32.     Defendants made telephone calls, as more specifically alleged below, to Plaintiff's cellular telephone number (305)-XXX-1188 (hereinafter, "Cellular Telephone") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

33.     Plaintiff the possessor, controller, and regular user of a Cellular Telephone with assigned telephone number (305) XXX-1188.

34.     At no time herein did Defendants possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

35.     Further, if Defendants contends they did possess such consent at one point in time, Plaintiff nonetheless revoked any alleged prior existing consent the moment Plaintiff demanded that Defendants cease calling Plaintiff's Cellular Telephone, advised Defendants that she was represented by an attorney with respect to the Debt, provided Defendants with said attorney's contact information, and asked that future Debt collection calls and communications be directed to such counsel.

36.     Additionally, if Defendants contend the below-referenced phone calls were made for "informational purposes only," Defendants nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

37.     After suffering a financial hardship and falling behind on the payment of her debts, Plaintiff retained The Law Office of Eva Donohue, P.A. (hereinafter, "Eva Donohue") to represent her with respect to her debts, including the Debt allegedly owed to Defendant.

38.     On October 5, 2018, Plaintiff, through the assistance of Eva Donohue, sent Defendant Webbank, via its servicer, Defendant Fingerhut, a written notice by certified mail, tracking #70181830000111465680, informing Webbank and Fingerhut that Plaintiff was represented by Eva Donohue with respect to the Debt (hereinafter, "Notice of Representation"). The Notice of Representation contained Eva Donohue's name, address and phone number and requested that Webbank, Fingerhut, and their agents cease all further direct communications with Plaintiff.

39.     On October 11, 2018, the Notice of Representation was delivered to Webbank and/or Fingerhut.  Please see attached a true and correct copy of the Notice of Representation and its USPS delivery confirmation, attached hereto and labeled as **"Exhibit A"**.

40.     Additionally, the Notice of Representation specifically instructed and placed Webbank and Fingerhut on notice of Plaintiff's revocation of any prior express consent that she may have given Webbank and/or Fingerhut to receive telephone calls on Cellular Telephone using an ATDS, a PTDS and/or an APV, and specifically requested Webbank and Fingerhut not to call Plaintiff's home telephone or Cellular Telephone number.  *See* "Exhibit A".

41.     Despite Webbank and Fingerhut possessing actual notice and having knowledge of Plaintiff's representation of Eva Donohue with respect to the Debt and having notice of Plaintiff's request to cease making all Debt collection calls directly to Plaintiff, Webbank and/or Fingerhut continued to bombard Plaintiff's Cellular Telephone in an attempt to collect on the Debt.

42.     As of October 11, 2018, Webbank and Fingerhut possessed actual knowledge of Plaintiff's revocation of any purported prior express consent to make calls to Plaintiff's Cellular Telephone number using an ATDS, a PTDS and/or an APV, and possessed actual knowledge that Plaintiff was represented by Eva Donohue with respect to the Debt.

43.     Since October 11, 2018 through the filing of this Complaint, Webbank and/or Fingerhut, directly or indirectly, has made *at least* **72 calls** directly to Plaintiff's Cellular Phone using ATDS, a PTDS, and/or an APV to collect the Debt.  Please see attached a true and correct copy of a call log of calls Defendants made to Plaintiff's Cellular Telephone, attached and labeled "**Exhibit B.**"

44.     Upon information and belief, Defendant Fingerhut made each of the aforementioned calls on Defendant Webbank's behalf, for Webbank's benefit, and with Webbank's knowledge and approval.

45.     When Plaintiff answered several of the aforementioned calls, each such began with a robotic or prerecorded voice message.

46.     Not a single call made by Webbank and/or Fingerhut to Plaintiff as enumerated herein was placed for "emergency purposes."

47.     Webbank and/or Fingerhut made each of the calls enumerated herein, directly or indirectly, in knowing and willful violation of the FCCPA and the TCPA.

48.     From each and every call placed without consent by Webbank and/or Fingerhut to Plaintiff's Cellular Telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

49.     From each and every call placed by Webbank and/or Fingerhut to Plaintiff's Cellular Telephone, Plaintiff suffered the injury of occupation of her Cellular Telephone line and Cellular Telephone by unwelcome calls, making the Cellular Telephone unavailable for legitimate callers or outgoing calls while the phone was ringing from Webbank's and/or Fingerhut's unwanted and harassing calls.

50.     From each and every call placed without express consent by Webbank and/or Fingerhut to Plaintiff's Cellular Telephone, Plaintiff suffered the injury of unnecessary expenditure of her time.  For calls that were answered, the time Plaintiff spent on the call was unnecessary as she specifically and expressly requested for the calls to stop.  Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected Webbank's and/or Fingerhut's unwanted and harassing calls.

51.     Each and every call Webbank and/or Fingerhut made to Plaintiff's Cellular Telephone without Plaintiff's prior express consent where a voice message was left unlawfully and unnecessarily occupied space in Plaintiff's phone or network.

52.     Each and every call Webbank and/or Fingerhut made placed to Plaintiff's Cellular Telephone without Plaintiff's prior express consent resulted in the injury of a trespass to Plaintiff's chattel, namely her Cellular Telephone and her cellular phone services.

53.     As a result of the calls described above, Plaintiff suffered an invasion of her privacy.  Plaintiff were also affected in personal and individualized ways by stress, embarrassment,

and aggravation caused by Webbank's and/or Fingerhut's unwanted and unlawfully placed Debt collection calls.

54.    In addition to the foregoing Debt collection calls made to Plaintiff's Cellular Phone, after Webbank and Fingerhut were notified of Plaintiff's representation by an attorney with respect to the Debts, Webbank and/or Fingerhut continued to send Plaintiff Debt collection letters and statements.

55.    Moreover, on or about October 31, 2018, Webbank and Fingerhut sold, transferred, or assigned Debt -9031 to LVNV.

56.    When Webbank and Fingerhut sold, transferred, or assigned Debt -9031 to LVNV, consistent with their legal duty to do so, Webbank and Fingerhut advised LVNV of Eva Donohue's legal representation of Plaintiff with respect to the Debt, provided LVNV with Eva Donohue's contact information, and provided a copy of the Notice of Representation to LVNV.

57.    On or before January 12, 2019, LVNV turned the Debt over to TrueAccord for collection from Plaintiff.

58.    When LVNV turned the Debt over to TrueAccord for collection, consistent with its legal duty to do so, LVNV advised TrueAccord of Eva Donohue's legal representation of Plaintiff with respect to the Debt, provided TrueAccord with Eva Donohue's contact information, and provided a copy of the Notice of Representation to TrueAccord.

59.    As such, as of January 12, 2019, both LVNV and TrueAccord possessed actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and each possessed Eva Donohue's contact information.

60.    On or about January 12, 2019, despite LVNV and TrueAccord possessing actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and despite

LVNV and TrueAccord possessing Eva Donohue's contact information, TrueAccord sent a collection e-mail directly to Plaintiff in an attempt to collect Debt -9031.  Please see attached a true and correct copy of said collection e-mail labeled as **"Exhibit C."**

61.     TrueAccord sent the immediately-aforementioned e-mail on LVNV's behalf as LVNV's agent, and with LVNV's consent, knowledge, and approval.

62.     TrueAccord's above-referenced collection e-mail constitutes an indirect attempt by LVNV to collect the Debt from Plaintiff.

63.     On or about January 14, 2019, despite LVNV and TrueAccord possessing actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and despite LVNV and TrueAccord possessing Eva Donohue's contact information, TrueAccord sent *another* collection e-mail directly to Plaintiff in an attempt to collect Debt -9031.

64.     TrueAccord sent the immediately-aforementioned e-mail on LVNV's behalf, as LVNV's agent, and with LVNV's consent, knowledge, and approval.

65.     TrueAccord's above-referenced collection e-mail constitutes an indirect attempt by LVNV to collect the Debt from Plaintiff.

66.     As a direct result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, confusion and loss of sleep, believing that repeatedly requesting that Defendants cease calling Plaintiff regarding the Debt and cease calling Plaintiff at work regarding the Debt was wholly ineffective, that retaining Eva Donohue with respect to the Debt and advising Defendants of the same was wholly ineffective, and that Defendants' frequent, repeated, and invasive Debt collection attempts would simply have to be endured.

67.     It is Webbank's and Fingerhut's corporate policy to use an ATDS, a PTDS, and/or an APV when attempting to collect consumer debts, including the Debt (hereinafter, "Corporate Policy").

68.     Webbank and Fingerhut employed their Corporate Policy of using an ATDS, a PTDS, or an APV when Webbank and/or Fingerhut made the calls to Plaintiff's Cellular Telephone in this case.

69.     Webbank and/or Fingerhut made the calls to Plaintiff's Cellular Telephone with no effective way for Plaintiff to remove her Cellular Telephone number from Webbank and/or Fingerhut telephone dialing system.

70.     Webbank and/or Fingerhut made calls, or caused calls to be made, to Plaintiff with no effective way for Webbank and/or Fingerhut to remove Plaintiff's Cellular Telephone number from Webbank's and/or Fingerhut's telephone dialing system.

71.     Webbank's and Fingerhut's Corporate Policy provides no effective way for a consumer to effectively revoke any prior existing consent to be called by Webbank and/or Fingerhut using an ATDS, PTDS, and/or APV to make Webbank and Fingerhut cease calling  a number assigned to a cellular telephone.

72.     Webbank's and Fingerhut's Corporate Policy and procedures are structured as to continue to call individuals like Plaintiff using an ATDS, a PTDS, and/or an APV, regardless of how many times said individuals and request cease calling a cellular telephone regarding a debt owed to Webbank and/or Fingerhut.

73.     Upon information and belief, Webbank and Fingerhut engaged in a pattern and practice of unlawful debt collection and invasion of privacy, repeatedly and willfully calling

consumers' cellular telephones in an attempt to collect debts, using an ATDS, a PTDS, and/or an APV despite lacking consumers' prior express consent to do so.

74.     Webbank and Fingerhut willfully, knowingly and repeatedly undertakes these practices to increase revenue and profitability at the direct expense of consumers' livelihoods and privacy.

75.     Based on Webbank's and Fingerhut's pattern and practice described herein, this Court should grant significant and substantial punitive damages enough to prevent Webbank and Fingerhut from continuing this pattern and practice and to deter such similar future conduct in the Middle District of Florida.

76.     Plaintiff states that the imposition of a substantial punitive damage award is required in order to force Webbank and Fingerhut to comply with well-established federal and state privacy and debt collection laws.

77.     Plaintiff has not been able, due to both professional and personal commitments, as  well as the continued and increasing stress associated with the continued barrage of Debt collection calls, to record the specifics (as done above) on each and every call made to Plaintiff. Plaintiff asserts, however, that the above-referenced calls are but a sub-set of the calls made in violation of the FCCPA and TCPA.  Further, Defendants are in the best position to determine and ascertain the number and methodology of communications made to Plaintiff.

78.     Despite having advised Defendants of Eva Donohue's representation of Plaintiff with respect to the Debt, Defendants continue to attempt to collect the Debt directly from Plaintiff in violation of the FCCPA and the TCPA.

79.     Defendants' conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under Federal and State law.

80.     Given Defendants' conduct and their apparent intention and ability to continue to collect the Debt directly from Plaintiff in violation of said debt collection and privacy laws, Plaintiff has no adequate remedy at law.

81.     Plaintiff retained Undersigned Counsel as well as Eva Donohue for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

## COUNT ONE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## <u>VIOLATION OF FLORDA STATUTES, SECTION 559.72(7)</u>

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

82.     Defendants are subject to, and each violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

83.     Specifically, despite Plaintiff's request that Defendants cease calling her regarding the Debt, Webbank and/or Fingerhut repeatedly made calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV between October 2018 and November 2018, making *at least* seventy-two (72) calls to Plaintiff's Cellular Telephone, in its attempts to collect the Debt.

84.     Further, despite Plaintiff advising Defendants that she retained Undersigned Counsel with respect to the Debt and providing Defendants with Eva Donohue's contact information, Defendants continued to send Plaintiff letters and statements in their attempts to collect the Debt.

85.     Defendants' conduct served no purpose other than to annoy and harass Plaintiff into paying the Debt by continuing to impermissibly and unlawfully communicate directly with Plaintiff including by calling Plaintiff's Cellular Telephone in an attempt to collect the Debt, despite Plaintiff's demand that such calls cease, leading Plaintiff to believe that Defendants could and would continue to communicate directly with Plaintiff—circumventing Eva Donohue's legal representation of Plaintiff with respect to the Debt—unless and until Plaintiff made payment to Defendants on the Debt.

86.     Defendants' willful, flagrant and vulgar violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

87.     As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)</u>**

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

88.     Defendants are subject to, and each violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving notice and possessing actual knowledge that Plaintiff retained Eva Donohue with respect to the Debt and after possessing Eva Donohue's contact information.

89.     Specifically, Plaintiff provided Defendants with actual knowledge that Eva Donohue represented Plaintiff with respect to the Debt and provided Defendants with Eva Donohue's contact information via the Notice of Representation.

90.     Moreover, Webbank and/or Fingerhut provided LVNV with actual knowledge that Eva Donohue represented Plaintiff with respect to the Debt and provided Eva Donohue's contact information to LVNV.  LVNV subsequently provided TrueAccord with actual knowledge that Eva Donohue represented Plaintiff with respect to the Debt and provided Eva Donohue's contact information to TrueAccord.

91.     Despite possessing actual knowledge of Eva Donohue's representation of Plaintiff with respect to the Debt and Eva Donohue's contact information, Webbank and/or Fingerhut subsequently made repeated calls to Plaintiff between October 2018 and November 2018 in their attempt to collect the Debt, making *at least* seventy-two (72) calls to Plaintiff's Cellular Telephone.

92.     Furthermore, despite possessing Eva Donohue's contact information and knowledge Eva Donohue represented Plaintiff with respect to the Debt, Defendants continued to send letters and statements directly to Plaintiff in their attempts to collect the Debt.

93.     As such, Defendants attempted to collect the Debt directly from Plaintiff, a known represented party in violation of Florida Statutes, Section 559.72(18).

94.     As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## COUNT THREE:
## FAIR DEBT COLLECTION PRACTICES ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1692c(a)(2)

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

95.     LVNV and TrueAccord are subject to, and each violated the provisions of, 15 United States Code, Section 1692c(a)(2) by intentionally and repeatedly communicating directly

with Plaintiff after receiving notice and possessing knowledge of Plaintiff's representation by legal counsel with respect to the Debt.

96.     Specifically, when Webbank and Fingerhut sold, transferred, or assigned the Debt to LVNV, Webbank and Fingerhut—consistent with their duty to do so—provided LVNV with actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and provided Eva Donohue's contact information to LVNV.

97.     When LVNV turned the Debt over to TrueAccord for collection, LVNV—consistent with its duty to do so—provided TrueAccord actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and provided Eva Donohue's contact information to TrueAccord.

98.     Subsequently, despite LVNV and TrueAccord possessing the above-referenced knowledge, TrueAccord sent *at least* two (2) collection e-mails directly to Plaintiff in an attempt to collect the Debt.

99.     TrueAccord sent the immediately-aforementioned collection e-mails on LVNV's behalf as LVNV's agent and with LVNV's consent, knowledge, and approval.

100.     TrueAccord's above-referenced collection e-mails constitute an indirect attempt by LVNV to collect the Debt from Plaintiff.

101.     As such, LVNV and TrueAccord each violated 15 United States Code, Section 1692c(a)(2) by intentionally communicating directly with Plaintiff despite possessing actual knowledge of Plaintiff's legal representation by Eva Donohue with respect to the Debt.

102.     As a direct and proximate result of LVNV's and TrueAccord's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FOUR:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692d**

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

103.    LVNV and TrueAccord are subject to, and each violated the provisions of 15 United States Code, Section 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the Debt.

104.    Specifically, LVNV and TrueAccord possessed actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and possessed Eva Donohue's contact information.

105.    Subsequently, despite LVNV and TrueAccord possessing the above-referenced knowledge, TrueAccord sent *at least* two (2) collection e-mails directly to Plaintiff in an attempt to collect the Debt.

106.    TrueAccord sent the immediately-aforementioned collection e-mails on LVNV's behalf as LVNV's agent and with LVNV's consent, knowledge, and approval.

107.    TrueAccord's above-referenced collection e-mails constitute an indirect attempt by LVNV to collect the Debt from Plaintiff.

108.    LVNV's and TrueAccord's conduct served no purpose other than to annoy and harass Plaintiff into paying the Debt by continuing to impermissibly and unlawfully communicate directly with Plaintiff despite Plaintiff's demand that such communications cease or be directed to Eva Donohue's office, leading Plaintiff to believe that LVNV and TrueAccord could and would continue to communicate directly with Plaintiff—circumventing Eva Donohue's legal

representation of Plaintiff with respect to the Debt—unless and until Plaintiff made payment to LVNV and/or TrueAccord on the Debt.

109.    As a direct and proximate result of LVNV's and TrueAccord's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

## COUNT FIVE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e and e(10)</u>

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

110.    LVNV and TrueAccord are each subject to, and violated the provisions of, 15 United States Code, Section 1692e and e(10) by using false representations and deceptive means in attempting to collect the Debt.

111.    Specifically, LVNV and TrueAccord possessed actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and possessed Eva Donohue's contact information.

112.    Subsequently, despite LVNV and TrueAccord possessing the above-referenced knowledge, TrueAccord sent *at least* two (2) collection e-mails directly to Plaintiff in an attempt to collect the Debt.

113.    TrueAccord sent the immediately-aforementioned collection e-mails on LVNV's behalf as LVNV's agent and with LVNV's consent, knowledge, and approval.

114.    TrueAccord's above-referenced collection e-mails constitute an indirect attempt by LVNV to collect the Debt from Plaintiff.

115.     LVNV and TrueAccord each knew such direct communications and collection attempts were specifically prohibited by the FDCPA.

116.     LVNV's and TrueAccord's above-referenced conduct attempts to deceive and mislead Plaintiff into believing that Plaintiff must immediately make payment to LVNV and/or TrueAccord on the Debt or continue to endure LVNV's and TrueAccord unlawful Debt collection attempts.

117.     As a direct and proximate result of LVNV's and TrueAccord's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT SIX:**
**TELEPHONE CONSUMER PROTECTION ACT-**
**<u>VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)</u>**

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

118.     Webbank and Fingerhut are subject to, and violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an ATDS, PTDS, and/or APV to make a call a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

119.     At no time herein did Defendants possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, and/or an APV.

120.     If Defendants contend they possessed such consent, Plaintiff revoked any such purported consent when Plaintiff requested that Defendants cease calling Plaintiff regarding the Debt and revoked any such purported consent when Plaintiff advised Defendants that she had retained Eva Donohue with respect to the Debt and directed all further Debt collection communication to such counsel.

121.     Additionally, if Defendants contend the referenced phone calls were made for "informational purposes only," they nevertheless lacked the required prior express consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

122.     Between October 2018 and November 2018, despite lacking Plaintiff's prior express consent and despite Plaintiff requesting that Defendants cease calling her regarding the Debt, Webbank and/or Fingerhut repeatedly, directly or indirectly, called Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV, making *at least* seventy-two (72) calls to Plaintiff's Cellular Telephone.

123.     The phone calls made by Webbank and/or Fingerhut complained of herein are the result of a repeated willful and knowing violation of the TCPA.

124.     As a direct and proximate result of Webbank's and Fingerhut's conduct, Plaintiff suffered:

a.     The periodic loss of her Cellular Telephone service and the cost associated therewith;

b.     Lost material costs associated with the use of peak time minutes allotted under her Cellular Telephone service contract; and

c.     Stress, anxiety, loss of sleep, invasion of privacy, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls placed in violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.      Judgment against Defendants declaring that Defendants violated the FCCPA;

b.      Judgment against Defendants for maximum statutory damages for violations of the FCCPA;

c.      Judgment against LVNV and TrueAccord for maximum statutory damages for violations of the FDCPA;

d.      Judgment providing injunctive relief, prohibiting Defendants from further engaging in conduct that violates the FCCPA and the TCPA;

e.      Judgment against Webbank and Fingerhut for statutory damages in the amount of $500.00 for each of Webbank's and/or Fingerhut's telephone calls that violated the TCPA;

f.      Judgment against Webbank and Fingerhut for treble damages in the amount of an additional $1,000.00 for each telephone call that violated the TCPA for which Webbank and/or Fingerhut acted knowingly and/or willfully;

g.      Actual damages in an amount to be determined at trial;

h.      Punitive damages in an amount to be determined at trial;

i.      An award of attorneys' fees and costs; and

j.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**LEAVENLAW**

/s/ *Ian R. Leavengood*
**[X] Ian R. Leavengood, Esq., FBN 0010167**
□ **Sean E. McEleney, Esq., FBN 0125561**
□ **Kelly C. Burke, Esq., FBN 0123506**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
smceleney@leavenlaw.com
kburke@leavenlaw.com

~and~

**Eva M. Donohue, Esq., FBN 576581**
**EVA M. DONOHUE, P.A.**
P.O. Box 5074
Lakeland, FL 33807
Phone: (863) 687-6400
Fax: (863) 687-6440
info@emdlawfirm.com
*Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA          )
                          )
COUNTY OF POLK            )

Plaintiff HELENE DANIELS, having first been duly sworn and upon oath, deposes and states as follows:

1.  I am a Plaintiff in this civil proceeding.

2.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6.  Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7.  Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

_Helene Daniels_
HELENE DANIELS

Subscribed and sworn to before me
this 4th day of October, 2019.

_Kaci D. Mullins_
Notary Public

My Commission Expires:

Proof of I.D.: FL Identification card

